ALTER, GOLDMAN & BRESCIA, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 670-0030

**Hearing Date: October 5, 2010 @ 10:00 a.m.**
**Objection Date: October 4, 2010 @ 5:00 p.m.**

Bruce R. Alter (0457)
Dana P. Brescia (0501)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

    MATTERHORN NURSERY, INC.

                        Debtor.
------------------------------------------------------------------X

Chapter 11
Case No. 10-23887(RDD)

**APPLICATION FOR ORDER (I) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL
PURSUANT TO BANKRUPTCY CODE SECTION 363(C)(2) AND BANKRUPTCY RULE 4001
ON AN INTERIM BASIS, (II) SCHEDULING A FINAL HEARING AND
(III) GRANTING RELATED RELIEF**

**TO:    THE HONORABLE ROBERT D. DRAIN,
         UNITED STATES BANKRUPTCY JUDGE,**

The Application of the above captioned debtor and debtor-in-possession, Matterhorn

Nursery, Inc. ("Matterhorn" or "Debtor") by their proposed attorneys, Alter, Goldman & Brescia,

LLP, respectfully represents and sets forth as follows:

**BACKGROUND**

1.      On September 10, 2010, the Debtor filed its petition for reorganization under

Chapter 11 of the United States Code (the "Bankruptcy Code").  No trustee or examiner and no

official committees have been appointed herein.

2.      The Debtor operates a nursery which grows its own flowers, operates a retail store

and provides landscaping services to the community. Debtor operates from approximately

seventeen (17) of the thirty-four (34) acres of 227 Summit Park Road, Spring Valley, New York

10977 (the "Property").  Matt Horn and Veronica Horn are the stockholders of Matterhorn and the

1

fee simple owners of the Property.

3.     The Debtor has continued in possession of its property and management of its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.     Over the past few years Debtor has experienced an increase in its operating costs and a decrease in its sales due to poor economic conditions resulting in substantial cash flow difficulties. Such decrease in income resulted in Debtor falling behind in their obligations to the taxing authorities as well as to Farm Credit East, ACA, successor by merger to First Pioneer Farm Credit, ACA ("Farm Credit").

5.     Debtor has one (1) other secured creditor, which falls behind Farm Credit in priority. New York State Department of Taxation and Finance ("NYS") alleges a secured claim in the amount of $364,631.45.  According to the proof of claim filed by NYS in this proceeding, $10,343.74 of its claim became secured on or about November 7, 2008; $109,723.83 of its claim became secured on or about April 21, 2009; $152,956.42 of its claim became secured on or about November 18, 2009 and $91,607.46 of its claim became secured on or about March and June of 2010.

6.     With the assistance of this Court, the Debtor is confident that it will be able to efficiently workout its debts while maximizing the value of the business for the benefit of its creditors while the Debtor's principals attempt to sell a parcel of the Property, not utilized by the Debtor, the proceeds of which will be utilized to fund the Debtor's reorganization.

**THE DEBTOR'S PRE-PETITION SECURED DEBT**
**Farm Credit East, ACA**

7.     Commencing on or about November 1997 and continuing throughout February 2009, Farm Credit entered into a series of Loans and Security Agreements with Debtor (collectively the "Loan Documents") pursuant to which Farm Credit advanced monies to Debtor, believed to be in the principal amount of $3,430,000.00.

Copies of the Installment Promissory Notes, Loan Agreements and UCC-1's supplied to

Applicant by counsel for Farm Credit are attached hereto as Exhibit "A".

8.      Farm Credit asserts a secured interest in:

"all now existing and after acquired farm products, inventory, accounts, documents, instruments, chattel paper and general intangibles, and the products thereof" and

"All now existing and after acquired equipment, including but not limited to all farm machinery and equipment, motor vehicles, tractors, trucks, harrows, and all tiling and harvesting tools"

in accordance with Loan Agreements, Security Agreements covering

Machinery/Equipment, Inventory/Accounts Receivable and UCC-1 Financing

Statements.

9.      The Debtor's obligations to Farm Credit are further secured against the

Property owned by Debtor's principals, pursuant to a series of Mortgages executed by

Matt and Veronica Horn, simultaneously with the execution of each Installment

Promissory Note, as well as additional real property owned by Debtor's principals

located in Elmira, New York and West Dover, Vermont.

10.      The liens and security interests granted to Farm Credit were duly

perfected and Farm Credit's liens and security interests in the above described collateral

are the first liens in the Debtor's property. Farm Credit alleges that some time prior to the

Filing Date, Debtor defaulted on its repayment obligations. Farm Credit alleges that as of

the Filing Date the Debtor was indebted to Farm Credit under the Loan Documents in

the aggregate principal amount, including interest and fees, of not less than

$3,863,029.19 (such amount, together with any additional interest, fees, costs, expenses

[including reasonable fees and expenses of Farm Credit's counsel], and other amounts

heretofore or hereafter accruing thereon or at any time thereafter is collectively referred

to herein as, the "Indebtedness").

11.     As of the filing date, Matterhorn has assets of approximately $3,180,000.00, of which approximately $982,000.00 consists of inventory, $200,000.00 consists of machinery and equipment and approximately $80,000.00 consists of accounts receivables.

12.     As of the filing date, Debtor's principals believe the Property located at 227 Summit Park Road, Spring Valley, New York to be valued at approximately twenty million ($20,000,000) dollars.  A recently aborted sale for approximately 20 acres of the Property was negotiated for ten million nine hundred thousand ($10,900,000.00) dollars. Debtor's principals believe their property located in Elmira, New York to be valued at approximately three hundred thousand ($300,000.00) dollars and Debtor's principals value their West Dover, Vermont property to be worth approximately six hundred thousand ($600,000) dollars.

13.     Based upon the value of Debtor's assets and the value of Debtor's principal's assets, the Indebtedness asserted to be owed Farm Credit is not only fully collateralized, but it is abundantly over-collateralized and therefore no adequate protection payments are necessary for Debtor's use of Farm Credit's cash collateral. Farm Credit will however be granted replacement liens on all property of the Debtor now in existence or hereafter acquired with such liens having the same extent, priority and validity as its pre-petition liens.

14.     Debtor and Farm Credit have entered into an Interim Consent Order (I) Authorizing Debtor to Use Cash Collateral pursuant to 11 U.S.C. Section 363; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001; and (III) Granting Related Relief (the "Interim Consent Order"), a copy of which is annexed hereto as **Exhibit "B"**.

15.     The pertinent provisions of the Interim Consent Order are as follows:

(a)    Debtor is authorized to use Cash Collateral, *nunc pro tunc*, to the date of filing, for the purpose of operating its business within the constraints imposed by the Budgets until the Final Hearing. The Debtor's expenditures may vary from the Budgets in an aggregate amount not to exceed 10% of the total expenditures set forth in the Budgets;

(b)    As adequate protection, Farm Credit is granted valid, binding, enforceable, and duly perfected security interests in and liens on all property of the Debtor now in existence or hereafter acquired, including, without limitation, new inventory of the Debtor acquired from and after the Petition date and all proceeds, accounts receivable, cash, products, rents and profits thereof;

16.    Any replacement lien granted to Farm Credit shall not attach to the proceeds of any recoveries of estate causes of action under Section 542 through 553 of the Bankruptcy Code.

17.    If sufficient funds are not otherwise available from the Debtor's estate from unencumbered assets, Farm Credit will exclude from the Liens and the Adequate Protection Liens and make available to the Debtor's estate for payment of (i) the quarterly fees of the United States Trustee required to be paid pursuant to 28 U.S.C. § 1930(a) and (b) and (ii) $10,000 for a Chapter 7 Trustee in the event the Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code.

**RELIEF SOUGHT**

18.    The Debtor submits this Application pursuant to §363(c)(2)(B) and 361 of the Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with respect to the Debtor's request for authority to use property

which may constitute cash collateral in which Farm Credit has asserted a security interest in said cash collateral, substantially in accordance with the terms and conditions set forth in the proposed Interim Consent Order, attached hereto as **Exhibit "B".**

19.     The proposed Interim Consent Order grants the Debtor the authority to use cash collateral pursuant to 11 U.S.C. §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent necessary to continue the operation of its business and to preserve the value of its estate pending a final hearing. Section 363(a) of the Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

20.     Section 363(c)(1) of the Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

21.     Section 363(d) of the Code provides as follows:

> "(d)    The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

22.     Accordingly, pursuant to Section 363(c)(2) of the Code, the consent of Farm Credit or authority from this Court is required to use cash collateral in which Farm Credit holds a perfected, first priority security interest.

6

23.    In consideration for the use of cash collateral and other collateral in accordance with the proposed Order, the Debtor proposes to grant Farm Credit a replacement lien in all property of the Debtor now in existence or hereafter acquired, including, without limitation, new inventory of the Debtor acquired from and after the Petition date and all proceeds, accounts receivable, cash, products, rents and profits thereof, to the extent that Farm Credit had a valid security interest in said pre-petition assets and in the continuing order of priority that existed as of the Filing Date.  Any replacement lien granted to Farm Credit shall not attach to the proceeds of any recoveries of estate causes of action under Section 542 through 553 of the Bankruptcy Code.

24.    The Interim Consent Order provides for a carve out, wherein, if sufficient funds are not otherwise available from the Debtor's estate from unencumbered assets, Farm Credit will exclude from the Liens and the Adequate Protection Liens and make available to the Debtor's estate for payment of (i) the quarterly fees of the United States Trustee required to be paid pursuant to 28 U.S.C. § 1930(a) and (b) and (ii) $10,000 for a Chapter 7 Trustee in the event the Chapter 11 Case is converted to a case under Chapter 7 of the Bankruptcy Code.

25.    The Debtor submits that, in order to preserve the Debtor's estate and ensure the viability of the Debtor pending the hearing Farm Credit should be granted replacement liens with the same nature, extent and validity of its pre-petition lien, subject to investigation by any creditors or committee appointed in the Debtor's Chapter 11 case.

## **General Request for Authority To Use Cash Collateral**

26.     The immediate and continued use of cash collateral is essential to the operation of the Debtor's business, and will not only preserve the estate but will help to maximize its value for the benefit of its creditors.

27.     The Debtor therefore desires to obtain authority to use cash collateral of Farm Credit pursuant to and in accordance with the proposed Interim Consent Order annexed hereto as **Exhibit "B"** and to be presented for signature and entry at the Interim Hearing.

28.     The proposed Interim Consent Order expressly provides that in consideration for the use of cash collateral and other collateral of Farm Credit, the Debtor shall grant Farm Credit a replacement lien in all property of the Debtor now in existence or hereafter acquired, including, without limitation, new inventory of the Debtor acquired from and after the Petition date and all proceeds, accounts receivable, cash, products, rents and profits thereof, to the extent that had a valid security interest in the Debtor's pre-petition assets and in the continuing order of priority that existed as of the Filing Date, subject to the United States Trustee fees as set forth in the proposed Interim Consent  Order.

29.     The Debtor proposes to use cash collateral only for ordinary and necessary operating expenses substantially in accordance with the operating Budgets annexed hereto as **Exhibit "C"** (the "Budgets").

30.     The Debtor submits that its request for use of cash collateral herein is reasonable, proper and in the best interests of its creditors. Furthermore, the granting of the Debtor's request substantially in accordance with the terms and conditions of the proposed Interim Consent Order and ultimately a Final Order will increase the likelihood that Debtor will be reorganized pursuant to Chapter 11 of the Code.

31.     This Application and notice of the Interim Hearing and the relief requested

in the Application is being provided to all parties asserting secured claims against

Debtor, and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), the

Debtor's twenty largest unsecured creditors and the United States Trustee.

32.     The Debtor respectfully requests that the Court dispense with the

requirement of filing a Memorandum of Law in connection with this Application, in that

there are no novel or difficult legal issues presented in connection with this Application.

**WHEREFORE**, the Debtor respectfully requests entry of the proposed Interim Consent

Order, approving and authorizing the use of cash collateral pursuant to and in accordance with

this Application and the proposed Interim Consent Order, together with such other and further

relief as is just and proper under the circumstances.

Dated: Harrison, New York
        September 24, 2010

> ALTER, GOLDMAN & BRESCIA, LLP
> Proposed Attorneys for the Debtor
> 550 Mamaroneck Avenue
> Harrison, New York 10528
> (914) 670-0030
> By: */s/ Dana P. Brescia*
>         Dana P. Brescia (0501)